IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID WILSON,

        Plaintiff,                    No. CIV S-07-1192 GEB DAD P

   vs.

JAMES TILTON, et al.,

        Defendants.          <u>ORDER</u>

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. By order filed February 4, 2009, plaintiff's third amended complaint was dismissed with leave to amend. Plaintiff has filed a fourth amended complaint.

## PLAINTIFF'S ALLEGATIONS

        Plaintiff names the following individuals as defendants: James Tilton, former director of the California Department of Corrections and Rehabilitation (CDCR); Suzan L. Hubbard, Warden of the California Medical Facility (CMF); California Governor Arnold Schwarzenegger; and CMF employees Fisher, Hall, Benton, Swann, DeMars, Soufi, McGahey, Gross, Pearson, Brida, and Grannis. (Typewritten document entitled "Fourth Amended

/////

Complaint," attached to form complaint (hereinafter Complaint), at 3.)  Plaintiff alleges that all of these defendants have:

> denied due process Fourteenth Amendment mental health treatment and adequacy for psychological medical care by omitting to halt' Over-Crowding 'forced' double cell living of Plaintiff and other prisoners placing lives in imminent danger of Eighth Amendment conditions and retaliations to appeals Court motions of protected First Amendment right to petition for redress of grievance, and denial of witnesses and statements violating Six and Fourteenth Amendments to transfer taylored (sic) to Plaintiff without State law procedures to deny 'Liberty interest' absent of procedures to 'chill' protected right that served no penological purpose.

(Id.)  Plaintiff states in his complaint that all defendants are "sued in their individual and official capacities" and informs the court that he was incarcerated at California Medical Facility-Vacaville (CMF) and California State Prison Los Angeles County (CSP-LAC) during the events described in the complaint.  Plaintiff is a member of the Enhanced Outpatient Program (EOP).

Plaintiff's allegations, which are largely contained in the typewritten complaint, are lengthy, rambling, and difficult to decipher.  After a careful review of the record, the court has been able to construe plaintiff's basic allegations as the following:

1.  On January 9, 2007, plaintiff wrote a letter to Warden Hubbard asking that she forward to the appropriate authorities his grievance wherein he objected to being housed in a double cell unless he received therapy and was allowed to keep his legal material and other personal possessions.  Plaintiff alleges that his placement in a double cell was in violation of a department memo which requires staff to take the inmate's mental/physical disabilities and his fear of being double-celled into consideration when deciding whether to place him in a double cell.  (Complaint at 4, Exs. XX, XX(1), 23, 22, 22A.)

2.  Plaintiff's single cell status was inappropriately "taken by ICC" without following required procedures, and he was improperly placed in administrative segregation.  (Complaint at 4.)  Exhibits filed by plaintiff in support of this allegation demonstrate that plaintiff was placed in administrative segregation for the safety and security of the institution

after he actively discouraged other inmates from living in his cell, thereby making it "difficult to move another inmate into your cell without leaving them feeling vulnerable to physical attack." After a hearing, plaintiff was retained in administrative segregation "pending completion of investigation into use of duress and possible disciplinary action." Plaintiff was retained in a single cell while in administrative segregation. (Complaint, Exs. 1, 2.)

      3. Plaintiff alleges he appealed prison officials' refusal to provide him single-cell housing and from his placement in administrative segregation, but he was not satisfied with the results of those appeals. (Complaint at 4-5.) Exhibits filed by plaintiff in support of this allegation demonstrate that he filed an administrative appeal contesting his placement in a double cell but that the appeal was denied "as no basis" and plaintiff was "referred to medical for psych concerns regarding cell status." (Complaint, Ex. A.) At the director's level, plaintiff's requests for a single cell and for a transfer to Atascadero State Hospital were denied, but he was granted psychotherapy once or twice per week. (Complaint, Ex. Y.) Plaintiff also alleges, and his exhibits reflect, that he has received single cell status in the past and that the state trial judge who sentenced him on his crime of conviction recommended "Vacaville facility for psychiatric treatment." (Complaint, Exs. H(3), H(4), 3, 4A, AB(6)Z.) Plaintiff's exhibits also reflect that he was ultimately found not to meet the criteria for single cell status and was moved into a double cell. (Complaint, Ex. AB(6)Z1.) Plaintiff subsequently filed a cell compatibility form requesting to be housed with a specific inmate. (Complaint, Exs. 8, L(8).)

      4. Plaintiff alleges that defendant Brida denied his request to be housed with a specific inmate without first contacting plaintiff's clinician, and in "reprisal" for plaintiff's protected First Amendment activities. (Complaint at 5.) Plaintiff further alleges that the denial of his request for a single cell or to a cell assignment to live with a specific inmate violates department policies and memorandums, has resulted in "significant hardship in violation of the Eighth Amendment, and is the result of "deliberate indifference" by prison staff. (See Complaint at 5, Exs. S7, S7(A), S7(B), S7(C), S8, S9, S9(A).)

3

1  5. Plaintiff alleges that he appealed the denial of his request "that he not be forced to double cell unless himself and the other inmate sign a cell compatibility form, the Appellant receive 'one on one' Psychotherapy with a clinician or be sent to Atascadero State Hospital . . . [and] to be allowed to keep Legal material, a typewriter, an AM/FM CD Cassette player and a nine inch television." (Complaint at 5-6.) He further alleges that his appeal was denied by Warden Hubbard in retaliation for plaintiff's exercise of his First Amendment rights after he sent the warden a "restraining order" and a letter requesting her intervention in his housing status. (Complaint at 5-6, Ex. 30.) The denial of his grievance constituted deliberate indifference to plaintiff's mental health needs as a result of "over-crowding," and violated the Eighth Amendment. (Id.)

6. Plaintiff alleges that he received a rules violation report for refusing to accept an assigned cellmate and was improperly denied answers to questions he drafted in advance of the disciplinary hearing. (Complaint at 6, Exs. C(4), C(4)A, 3, 3(A).) In connection with this hearing, defendant Swan "alleged 'False' 115 for receiving Restraining Order 'Single Cell." (Complaint at 6.)

7. Plaintiff sent a letter to defendant Hubbard requesting her intervention in his attempts to obtain a single cell or to room with the inmate of his choice, after his similar requests were denied by Sergeant Murray. (Complaint at 6, Ex. 25.)

8. Plaintiff notified Dr. Bugas and defendant McGahey about his attempts to obtain single cell status or to be housed with a compatible inmate. (Complaint at 6.) Plaintiff's exhibits reflect that plaintiff wrote letters to Dr. Bugas and defendant McGahey, explaining his continuing problems with being forced to live in a double cell and requesting their "relief & intervention." (Complaint, Exs. 26, 27, 28.)

9. Plaintiff filed a "TRO" in federal court in the Plata and Coleman cases requesting that EOPs not be double celled until the Department of Corrections complied with

/////

4

court orders to reduce the prison population and/or plaintiff was transferred to Atascadero State Hospital.  (Complaint at 6.)

10. Plaintiff told defendant Swan that he was not receiving proper psychiatric treatment.  Defendant Swan threatened to place plaintiff in administrative segregation and took his TV, in retaliation for "115 dismissed and previous Court motion." (Complaint at 6-7.)  The next day, defendant Swan took plaintiff's radio in retaliation for "protected First Amendment right" but the radio was later given back to plaintiff after his appeal was granted.  (Id. at 7, Exs. S(4).)

11. Defendant Swan told plaintiff that he had to accept inmate Turner as a cellmate or be placed in administrative segregation, even though inmate Turner yells in his sleep and keeps plaintiff awake all night.  (Complaint at 7.)

12. Defendants Soufi and McGahey, and Dr. Bugas, refused to help plaintiff with his problems regarding his cellmate, including the fact that plaintiff was unable to sleep, which denied plaintiff adequate medical care in violation of the Eighth and Fourteenth Amendments.  (Id.)

13. Plaintiff wrote a letter to correctional officer Smith asking for his help in getting plaintiff's cellmate removed.  (Id. at 8, Ex. UU22.)

14. Defendant Swan placed plaintiff in administrative segregation in retaliation for asking correctional officer Smith for help with his cellmate, and threatened plaintiff several times, in retaliation for his actions in filing a grievance against Swan.  Plaintiff was denied an investigative employee at the hearing before the ICC to consider his placement in administrative segregation.  Defendant Benton ratified defendant Swan's actions, in retaliation "of protected right."  (Complaint at 8.)  An exhibit attached to plaintiff's complaint, and signed by defendant Benton, reflects that on April 22, 2007, plaintiff was placed in administrative segregation after he told Officer Turner that demons were telling him to hurt his cellmate.  (Complaint, Ex. D(1).)  The form reflects that plaintiff declined an investigative employee at the subsequent hearing, but

1  plaintiff alleges that this part of the form was filled out after he had already signed the document,
2  which violated plaintiff's right to due process. (Complaint at 8, Ex. D(1).) Plaintiff alleges that
3  he requested a response to certain questions, but the captain and defendant Hubbard denied this
4  request, in violation of his rights under the Fourteenth Amendment. (Complaint at 8.) Plaintiff
5  appealed the decision to place him in administrative segregation and requested a single cell or to
6  be housed with a compatible inmate. (Complaint, Ex. D(7).) This appeal was denied by
7  defendants Benton and Grannis. (Complaint, Exs. D(7), D(11).) The Director's Level Appeal
8  decision, signed on behalf of defendant Grannis who, according to plaintiff, "represents"
9  defendant Tilton, provides the following explanation:

> On June 1, 2007, the appellant was interviewed by Correctional Lieutenant R. Benton. The reviewer found that the appellant was placed into the ASU on April 22, 2007 on charges of Threatening an Inmate, by writing and signing a note that was given to the M-2 officer that stated, in part as it referred to his cellmate, " . . . and disturbs me to the point where I (am) extremely paranoid to where the Demons tell me to hurt my cellmate." Captain Fisher conducted the Administrative Review on April 23, 2007. Captain Fisher retained the appellant in the ASU pending review of staff/inmate safety and the Institution Classification Committee (ICC) review.

16  (Complaint at 8, Ex. D(11).) Plaintiff alleges that the denial of his administrative appeal ratified
17  the retaliatory actions of defendant Swan and violated his Fourteenth Amendment right to due
18  process. (Complaint at 8.)

19        14. On May 8, 2007, plaintiff sent defendants Schwarzenegger and Hubbard
20  notification of his allegations that EOPs should not be double-celled, but the defendants failed to
21  respond. (Complaint at 8-9.)

22        15. On May 17, 2007, plaintiff was charged with a disciplinary violation by
23  defendant DeMars. (Complaint at 9.) Plaintiff "wrote Questions for Witnesses" which were
24  apparently not answered at the disciplinary hearing. (Id.) The proceedings violated his right to
25  procedural due process, and he was found guilty by defendant Hall, in violation of his right to
26  /////

1  due process and in retaliation of his assertion of his First Amendment rights. (Id.) All of his
2  subsequent appeals were denied. (Id.)

3    16. On May 8, 2007, plaintiff filed a complaint against defendant DeMars, which
4  was granted at the second level and denied by the Director. (Complaint at 9.)

5    17. On June 5, 2007, plaintiff received a Director's Level Decision signed on
6  behalf of defendant Grannis, which denied his request that he "be single celled unless he and the
7  perspective cellmate sign a compatibility form, the appellant receives one-on-one psychotherapy
8  at least two times each week, and he goes to the medication line with a psychiatrist to receive
9  mental wellness, or that he be sent to Atascadero State Hospital (ASH)." (Complaint at 9, Ex.
10 39.) This denial violated plaintiff's rights pursuant to the First, Eighth, and Fourteenth
11 Amendments. (Complaint at 9-10.)

12   18. On July 18, 2007, plaintiff was "placed for transfer" to another institution.
13 Plaintiff alleges that this transfer was in violation of prison regulations and in retaliation for
14 exercising his First Amendment rights. (Complaint at 10.) An exhibit filed by plaintiff reflects
15 that he was placed in protective custody due to "enemy concerns." (Complaint, Ex. 56.) Plaintiff
16 was transferred to CSP-LAC on August 29, 2007. (Complaint at 10.)

17   19. Plaintiff alleges that on October 17, 2007, he was "placed for transfer back to
18 CMF-Vacaville for 'error' Conspiracy was found in 'Point Score.'" (Complaint at 10.) Plaintiff
19 alleges that this transfer "served no penological purpose except chilling First Amendment
20 protected rights" and violated state law procedures for "'Point Score' taylored (sic) to Plaintiff
21 Wilson," in violation of his due process rights. Plaintiff alleges that his property was destroyed
22 and "threatened to transfer and assault for exercise his First Amendment rights to file prison
23 grievances and otherwise seek access to the legal process." (Id.)

24   Plaintiff claims that these actions by all of the defendants
25   gives legitimacy to forced double cell living, deliberate
  indifference to harm and place in imminent danger for mental
26   health treatment and adequacy, violating due process Fourteenth

Amendment for Eighth Amendment conditions with reprisals to protected rights of First Amendment to chill right of court access and to petition, with denial of witnesses for hearing violating Six Amendment, all violating U.S. Constitution.

(Complaint at 11.)

Plaintiff requests an injunction ordering defendant Hubbard not to house him in a double cell unless both plaintiff and his prospective cellmate sign a cell compatibility form and plaintiff receives "1-on-1 psychotherapy 2-3 times weekly, or other outside mental help." (Id.) Plaintiff also requests a transfer to Napa State Hospital or Atascadero State Hospital for treatment "and not return unless plaintiff request." (Id.) Plaintiff further requests a single cell, that alleged enemies be removed from his central file, and that his "CDC 115" be dismissed and vacated and his point score corrected. Finally, plaintiff requests declaratory relief and compensatory and punitive damages against all defendants. (Id. at 11-12.)

## DISCUSSION

Plaintiff's claims appear to fall into several categories. First, plaintiff objects to being housed in a double cell unless he can choose his cellmate, receive psychotherapy, and keep his appliances and legal materials. Second, plaintiff challenges his placement in administrative segregation when he attempts to obtain single cell housing. Third, plaintiff challenges the conduct of prison disciplinary hearings and hearings involving his placement in administrative segregation. Fourth, plaintiff alleges that he has been retaliated against for requesting single cell status and for asserting his First Amendment rights. Fifth, plaintiff alleges that defendants' refusal to allow him single cell status is arbitrary and capricious and constitutes deliberate indifference to his mental health needs. Sixth, plaintiff challenges his transfer to another prison.

### 1. Supervisory Personnel

As noted above, plaintiff has named as defendants Governor Arnold Schwarzenegger and James Tilton, former director of the California Department of Corrections and Rehabilitation. He alleges that he sent defendant Schwarzenegger documents regarding

double-celling of EOP inmates but that the Governor failed to act in response thereto. With respect to defendant Tilton, plaintiff alleges that one of the decisions in response to one of his administrative appeals was signed on behalf of defendant Grannis who, according to plaintiff, "represents" defendant Tilton.

As plaintiff has been advised on several occasions, the Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's allegations against defendants Schwarzenegger and Tilton are vague and conclusory and fail to comply with the standards set forth above. Plaintiff has failed to allege facts demonstrating a sufficient link between the actions of these defendants and the

claimed federal constitutional violations.  Accordingly, the court will not order service of plaintiff's fourth amended the complaint on defendants Schwarzenegger and Tilton.[1]

        2.  Transfer to Another Prison or to a Single Cell

Plaintiff challenges his transfer from CMF to CSP-LAC and seeks a transfer to either Atascadero State Hospital or Napa State Hospital.  He also seeks an order transferring him to a single cell housing assignment.  As plaintiff has been advised, inmates do not have a constitutional right to be incarcerated at a particular correctional facility or in a particular cell or unit within a facility.  See Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  As the Ninth Circuit has explained:

> An inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another. Unless there is some guarantee that transfer will not be effected except for misbehavior or some other specified reason, due process protections cannot apply.

Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985).  Thus, plaintiff's alleged deprivations of rights caused by prison officials' decisions regarding his place of confinement or housing assignments do not give rise to a federal constitutional claim under the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  In addition, any claim that plaintiff's "point score" was incorrectly calculated prior to his transfer to another prison is a claim based solely on state law and does not state a cognizable federal constitutional claim.

        3.  Injunctive Relief

Plaintiff requests injunctive relief against officials of CMF and CSP-LAC, requiring that he be housed in a single cell unless he has signed a cell compatibility form with

---

[1] In the "Introduction" section of his complaint, plaintiff alleges that defendants' actions have violated a CDCR policy of forcing all EOPs to be housed in a double cell.  (Complaint at 1.)  These allegations are unexplained, are not repeated in the body of the complaint, and are too vague and conclusory to state a cognizable claim for relief.  Accordingly, the court will not order service of the complaint on a cause of action for a violation of prison policy.

another inmate and receives psychotherapy and his personal property.  On August 3, 2009, plaintiff notified the court that he has been transferred to a correctional facility in San Diego, California.  When an inmate seeks injunctive or declaratory relief concerning an institution at which he is no longer incarcerated, his claims for such relief become moot.  See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  Accordingly, plaintiff's claims for injunctive relief are moot.

4. Deprivation of Property

Plaintiff may be attempting to allege that he has been deprived of his personal property without due process.  Where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized action of a prison official, a cognizable claim under 42 U.S.C. § 1983 cannot be stated if the state provides an adequate post-deprivation remedy.  See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy.")  An available state common law tort claim procedure to recover the value of property is an adequate remedy.  See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990).  Plaintiff cannot state a due process claim based on confiscation of his property because California's tort claims procedures provide an adequate post-deprivation remedy.  Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895).

5. Prison Grievance Procedures

Plaintiff alleges that his prison grievances were improperly denied.  These allegations fail to state a cognizable cause of action.  Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.

1993); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment").  State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Further, while prisoners have a First Amendment right to file prison grievances, they do not have a right to any particular response thereto.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995); Apple v. Glenn, 183 F.3d 477, 479-80 (6th Cir. 1999) (plaintiff who alleged public officials violated his First Amendment right to petition the government by not responding to his letters or taking the actions requested therein failed to state a claim).  For these reasons, plaintiff has failed to state a cognizable civil rights claim in alleging that his prison grievances were improperly denied.

    6. Denial of Due Process/ Prison Hearings

    Plaintiff also alleges that his right to due process was violated at disciplinary and classification committee hearings.  Plaintiff has a liberty interest in state action which imposes some "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. at 484.  If the hardship is sufficiently significant, the court must determine whether the procedures used to deprive that liberty satisfied Due Process.  Id. at 861.

    Three factors cited in Sandin's analysis provide a framework for determining whether a prison hardship is atypical and significant: (1) whether the challenged conditions mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the

/////

condition and the degree of the restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Id. at 486-87.

Plaintiff argues that as a result of due process violations during classification committee proceedings, he was wrongly held in administrative segregation. In order to succeed on this claim, plaintiff must demonstrate that the conditions of administrative segregation constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. However, plaintiff's complaint contains no allegations suggesting that the conditions of his confinement in administrative segregation were atypical and constituted a significant hardship. Accordingly, the court will not order service of the complaint on any defendant with respect to this claims.

      7. Retaliation

Plaintiff accuses several named defendants of taking retaliatory actions against him. In this regard, plaintiff alleges that defendant Swan retaliated against him for filing a prison grievance by placing him in administrative segregation and taking his possessions. Plaintiff also alleges that defendant Benton ratified defendant Swan's actions in retaliation "of protected right." Plaintiff alleges that defendant Hubbard retaliated against him for sending her an unspecified "restraining order" and a letter requesting her intervention in his housing status, by denying his prison grievance regarding his housing in a double cell. Plaintiff also alleges that defendants Grannis, Benton and Hubbard "ratified" the retaliatory actions of defendant Swan by denying plaintiff's prison grievances. Plaintiff alleges that he was found guilty of a disciplinary violation by defendant Hall in retaliation for his assertion of unspecified First Amendment rights. He also alleges that he was transferred to another prison in retaliation for asserting unspecified First Amendment rights.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

1  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a
2  legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An
3  allegation of harm may be sufficient even if an inmate cannot allege a chilling effect. Id.

4  Plaintiff's retaliation claims against defendants Benton, Hubbard, Grannis and
5  Hall fail to state a cognizable claim for retaliation under the above-cited standard. Plaintiff's
6  claims against these defendants are conclusory, factually unsupported and fail to allege that the
7  defendants' actions were taken in response to protected conduct by plaintiff. Plaintiff has,
8  however, stated a cognizable claim for retaliation against defendant Swan. Accordingly, the
9  court will order service of a retaliation claim only as to defendant Swan.

10  8. Eighth Amendment

11  Plaintiff alleges that defendants' failure to house him in a single cell, or to allow
12  him to find a suitable cellmate, violates his Eighth Amendment right to be free from cruel and
13  unusual punishment. He alleges and provides proof that he has been placed in administrative
14  segregation after threatening to kill his cellmate, has suffered sleep deprivation and mental health
15  breakdowns because of his housing situation, and has been found suitable for single cell housing
16  status on several occasions.

17  Deliberate indifference to a prisoner's serious illness or injury, or risk of serious
18  injury or illness, gives rise to a claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S.
19  97, 105 (1976). Inadequate medical care did not constitute cruel and unusual punishment
20  cognizable under § 1983 unless the mistreatment rose to the level of "deliberate indifference to
21  serious medical needs." Id. at 106. In applying this standard, the Ninth Circuit has held that
22  before it can be said that a prisoner's civil rights have been abridged, "the indifference to his
23  medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice'
24  will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir.
25  1980) (citing Estelle, 429 U.S. at 105-06). The "deliberate indifference" standard also applies to
26  claims challenging the adequacy of mental health care in prisons. Doty v. County of Lassen, 37

F.3d 540, 546 (9th Cir. 1994); Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  A medical need is "serious if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Doty, 37 F.3d at 546 (quoting McGuckin, 974 F.2d at 1059).

Plaintiff's allegations to the effect that prison officials were deliberately indifferent to his mental health needs when they forced him to live in a double cell state a cognizable claim for an Eighth Amendment violation.  Plaintiff has alleged a link between the actions of defendants Hubbard, Swan, McGahey, Benton, Brida, and Grannis and the alleged violation of his rights under the Eighth Amendment.  Accordingly, the court will order service of the complaint on those defendants with respect to that cause of action.

9. Other Defendants

Plaintiff has failed to state a cognizable claim against defendants Fisher, Hall, DeMars, Soufi, Gross, and Pearson.  Plaintiff's factual allegations against these defendants are vague, conclusory, and largely unintelligible, and fail to demonstrate a sufficient causal link between their actions and any claimed federal constitutional violations.  Accordingly, the court will not order service of the fourth amended complaint on defendants Fisher, Hall, DeMars, Soufi, Gross, or Pearson.

In summary, the court will order service of plaintiff's fourth amended complaint on defendant Swan with respect to plaintiff's retaliation claim.  The court will also order service of plaintiff's fourth amended complaint on defendants Hubbard, Swan, McGahey, Benton, Brida, and Grannis with respect to plaintiff's Eighth Amendment claim.  The court will not order service of plaintiff's fourth amended complaint on any of the other named defendants or with respect to plaintiff's claims for injunctive relief.

MOTION FOR INJUNCTIVE RELIEF

Plaintiff has also filed a "motion for protection order" in which he requests that the court prevent his placement in a double cell at California State Prison Solano until he has

received appropriate medication and/or psychotherapy.  Plaintiff also appears to be requesting that his "point score" be adjusted.

   Plaintiff seeks injunctive relief against officials at California State Prison Solano who are not named as defendants in this action.  This court is unable to issue an order against individuals who are not parties to a suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  Accordingly, plaintiff's motion for injunctive relief will be denied.

   Moreover, to the extent that plaintiff's motion for injunction is directed to individuals at CMF, the motion will be denied as moot.  As plaintiff has been advised, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is transferred to another institution.

   Accordingly, IT IS HEREBY ORDERED that:

   1. Service of the fourth amended complaint is appropriate to the extent noted above with respect to the following defendants:  Hubbard, Swan, McGahey, Benton, Brida, and Grannis.

   2. The Clerk of the Court shall send plaintiff 6 USM-285 forms, one summons, an instruction sheet, and a copy of the fourth amended complaint filed March 9, 2009.

   3. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

    a. The completed, signed Notice of Submission of Documents;

    b. One completed summons;

    c. One completed USM-285 form for each defendant listed in number 1 above; and

    d. Seven copies of the endorsed fourth amended complaint filed March 9, 2009.

4. Plaintiff shall not attempt to effect service of the fourth amended complaint on defendants or request a waiver of service of summons from any defendant. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

5. Plaintiff's April 7, 2009 motion "for protection order" (Doc. No. 21) is denied.

DATED: October 5, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
wils1192.1am

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID WILSON,

    Plaintiff,　　　　　　　　　No. CIV S-07-1192 GEB DAD P

  vs.

JAMES TILTON, et al.,

    Defendants.　　　　　　　　　ORDER

_____/

    Plaintiff hereby submits the following documents in compliance with the court's order filed _____:

    ____ <u>one</u> completed summons form;

    ____ 6 completed USM-285 forms; and

    ____ 6 true and exact copies of the fourth amended complaint filed March 9, 2009.

DATED: _____.

                                                      _____
                                                              Plaintiff