IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID WILSON,

    Plaintiff,                  No. 2:07-cv-1192 GEB DAD (PC)

    vs.

JAMES TILTON, et al.,

    Defendants.             FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's claim, raised in his fourth amended complaint, that defendants Hubbard, McGahey, Benton, Brida, and Grannis violated plaintiff's rights under the Eighth Amendment by acting with deliberate indifference to his mental health needs by forcing him to live in a double cell. See Order filed October 6, 2009.[1] This matter is now before the court on defendants' motion for summary

---

[1] Plaintiff's claims against one other defendant served in this action, defendant Swan, have been dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies prior to June 15, 2007, the date on which he signed his original complaint in this action. See Findings & Recommendations filed April 29, 2011 (Doc. No. 71), at 4; Order filed June 7, 2011 (Doc. No. 77). The court notes a typographical error in the April 29, 2011 Findings & Recommendations identifying that date as June 15, 200**9**; that error is hereby corrected to reflect the actual 2007 date on which plaintiff signed and dated the original complaint.

judgment.[2]

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

---

[2] Defendant Swan has also moved for summary judgment. In view of the dismissal of plaintiff's claims against defendant Swan, see footnote 1, supra, the court need not address the motion for summary judgment as it pertains to defendant Swan.

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 5, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I. Facts[3]

At all times relevant to this action plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). Fourth Amended Complaint, filed March 9, 2009 (Doc. No. 19), at 15.[4] Plaintiff was assigned to the CDCR's Enhanced Outpatient Program (EOP), a program for inmates with mental health treatment needs. Id. at 12.

On November 13, 2003, a Unit Classification Committee at California State Prison-Solano placed plaintiff on single cell status pending his transfer to another prison based on his assignment to the EOP level of mental health care. Ex. K(1)W to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. No. 72), filed May 6, 2011. Plaintiff was transferred to the R. J. Donovan Correctional Facility on December 23, 2003. Id., Ex. X. Upon plaintiff's arrival at his new institution of confinement, the Chief Medical Officer at R.J. Donovan "elected not to re-affirm" the single cell status recommendation of doctors at CSP-Solano. Id., Ex. Y. On February 11, 2004, plaintiff filed an inmate grievance seeking single cell

---

[3] Except as specifically noted, the facts herein are undisputed.

[4] Plaintiff's fourth amended complaint is verified and is therefore properly considered as an affidavit to the extent that the averments set forth therein are based on plaintiff's personal knowledge. See Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995). The page numbers refer to the court's electronic page number assigned to plaintiff's fourth amended complaint.

4

1  status or individual one-one-one psychotherapy two to three times per week unless he was
2  transferred to Atascadero State Hospital.  Id., Ex. X.  At the informal level of review, a clinician
3  at R.J. Donovan stated that clinical contact could be provided 2-3 times per week, but that
4  plaintiff's request for single cell status was a custody issue.  Id.  At the second level of
5  administrative review plaintiff was granted one to two out of cell psychotherapy sessions per
6  week and his appeal was otherwise denied.  Id., Ex. Y.

7  Plaintiff arrived at CMF on November 4, 2004.  Ex. F. to Defendants' Motion for
8  Summary Judgment (Doc. No. 68), Declaration of S. Hubbard in Support of Defendants' Motion
9  for Summary Judgment, filed April 13, 2011(Decl. of Hubbard), at ¶ 4.  Plaintiff again
10 commenced a grievance process seeking single cell status and regular psychotherapy.  Ex. 1P to
11 Plaintiff's Opposition (Doc. No. 72).  A Director's Level Decision dated September 6, 2005 and
12 signed by defendant Grannis included findings from the second level decision that plaintiff had
13 "temporarily been single celled as clinically deemed necessary",that the Interdisciplinary
14 Treatment Team (IDTT) had continued plaintiff's single cell status on April 12, 2004 and again
15 on May 19, 2005," and had "determined that [plaintiff] will be single celled until [he] is deemed
16 to be stable."  Id., Ex. 6.

17 On October 19, 2005, plaintiff was cleared to be double-celled.  Defendants' Ex.
18 E, Declaration of R. McGahey in Support of Defendants' Motion for Summary Judgment (Doc.
19 No. 68), filed April 13, 2011 (Decl. of McGahey) at ¶ 15.  On February 8, 2006 and August 2,
20 2006, plaintiff was again placed on temporary single cell status.  Id. at ¶¶ 16-17.  On September
21 28, 2006, plaintiff's mental health clinician evaluated plaintiff and removed his single cell status.
22 Id. at ¶ 18.  Based on that evaluation, on October 26, 2006, a unit classification committee (UCC)
23 released plaintiff to be double-celled.  Id. at ¶ 19.

24 On January 9, 2007, plaintiff wrote a letter to defendant Hubbard forwarding
25 another inmate appeal submitted by plaintiff requesting that he not be forced to live in a double
26 cell unless he and the cellmate signed a cell compatibility form, plaintiff received one on one

psychotherapy with a clinician two to three times a week and a one-on-one session with a psychiatrist or, alternatively, plaintiff was sent to Atascadero State Hospital.[5] Fourth Amended Complaint (Doc. No. 19) at 15. On January 18, 2007, defendant Brida responded to plaintiff's grievance as follows:

> It is departmental policy and therefore the expectation that inmates double-cell and accept housing assignments as directed by staff, per memorandum dated April 15, 2003. Requests to receive 1 on 1 psychotherapy with clinical 2-3 times weekly shall be discussed with clinician. Your request to keep legal material and personal property shall be determined by institutional policy & procedure.

Id. at 16, 28.

On April 18, 2007, plaintiff was housed with a cellmate, inmate Turner. Id. at 18; Decl. of Hubbard at ¶ 4. The cellmate had single cell status before he paroled. Fourth Amended Complaint (Doc. No. 19) at 18. While celled with plaintiff, inmate Turner "talked to angels, spirit baby in mirror all night, when in bed 'Yelled' at angels most of night." Id. On April 20, 2007, plaintiff explained this problem to defendant McGahey and asked why McGahey had not responded to plaintiff's March 8, 2007 request for interview concerning his double celling. Id. at 18, 64. McGahey responded to plaintiff that he had not had time to do so. Id. at 18.

On April 22, 2007, plaintiff was moved out of the cell with inmate Turner and placed in administrative segregation. Decl. of Hubbard at ¶¶ 4, 6.

On May 4, 2007, plaintiff filed an administrative appeal seeking release from administrative segregation and requesting relief concerning his double celling similar to the relief requested in his January 9, 2007 letter to defendant Hubbard and prior grievances. That administrative grievance was denied at all levels of review, including at the Director's Level by an appeals reviewer for defendant Grannis. Id. at 19.

/////

---

[5] A copy of the letter, attached to the fourth amended complaint as Exhibit 23 is dated January 9, 2006. Doc. No. 19 at 27.

6

While at CMF, plaintiff was assigned to a cell by himself from November 4, 2004 through May 27, 2005, with the exception of two days. Decl. of Hubbard at ¶ 4. Plaintiff had a cellmate from May 27, 2005 until June 8, 2005. Id. Thereafter, he was again housed in a cell by himself from June 8, 2005 until April 18, 2007, with the exception of three days. Id. Plaintiff had a cellmate from April 18, 2007 until April 22, 2007, and was thereafter once again assigned to a cell by himself until he was transferred to California State Prison-Los Angeles County (CSP-LAC). Id. Once at CSP-LAC, plaintiff was housed in a single cell through April 30, 2008. Id.

ANALYSIS

Defendants seek summary judgment on the grounds that (1) none of them were the cause of plaintiff being housed with any cellmate; (2) plaintiff did not have a serious mental health need requiring that he be assigned single cell status; (3) none of them were deliberately indifferent to plaintiff's mental health treatment needs; (4) plaintiff sustained no injury as a result of his brief placements with cellmates; and (5) defendants are entitled to qualified immunity.[6]

The claim on which this action is proceeding arises under the Eighth Amendment. Specifically, plaintiff claims that defendants acted with deliberate indifference to his need for adequate mental health care by failing to continuously maintain him on single cell status and instead forcing him on occasion to double cell with other inmates. Plaintiff's Eighth Amendment claim has two parts. The first is an objective component, which requires proof that plaintiff was "'incarcerated under conditions posing a substantial risk of serious harm.'" Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The second component is subjective: plaintiff must show that defendants acted

---

[6] Defendants also seek summary judgment in their favor with respect to plaintiff's retaliation claims. This court has already found that the retaliation claims plaintiff attempted to raise in his fourth amended complaint against defendants Benton, Hubbard and Grannis were not cognizable and that the only cognizable retaliation claim stated by plaintiff was against defendant Swan. See Order filed October 6, 2009 (Doc. No. 23) at 13-14. As noted above, plaintiff's claims against defendant Swan have been dismissed without prejudice. For these reasons, the court need not address the arguments advanced by defendants concerning any retaliation claim.

with "deliberate indifference" to that risk. Clouthier, 591 F.3d at 1242. To make that showing, plaintiff must present facts which show that defendants were "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and that they each drew that inference. Id. (quoting Farmer at 837). Moreover, a mere difference of opinions about the appropriate course of medical care, without more, is insufficient to establish deliberate indifference. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In the instant case, there is no evidence before the court that defendants McGahey, Benton, Brida or Grannis were involved in either a classification decision to assign plaintiff to share a cell with a cellmate, or a medical determination that plaintiff could be housed with a cellmate. Defendant Brida's sole involvement in the events complained of by plaintiff was the January 17, 2007 decision made at the informal level of review in response to one of plaintiff's inmate appeals. In that instance, defendant Brida responded to the appeal by advising plaintiff of institutional policy concerning double celling, and informing him that requests for individual psychotherapy would be worked out with a clinician. See Fourth Amended Complaint (Doc. No. 19), Ex. 22. There is no evidence before the court that defendant Brida acted with deliberate indifference to plaintiff's need for adequate mental health care in connection with this response. For this reason, defendant Brida is entitled to summary judgment in his favor.

Likewise, the only evidence before the court with respect to defendant McGahey's involvement in the events complained of is plaintiff's averment that on April 18 or 20, 2007, defendant McGahey told plaintiff he had not had sufficient time to respond to plaintiff's request for single cell status. See Fourth Amended Complaint (Doc. No. 19) at 4, 18. There is no evidence before the court indicating that the alleged delay in responding to plaintiff's request was the product of deliberate indifference to plaintiff's need for adequate mental health care, or that any alleged delay caused plaintiff substantial harm. Cf. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay in providing care does not constitute

/////

deliberate indifference). In light of the record before the court in connection with pending motion, defendant McGahey is entitled to summary judgment as well.

Defendant Hubbard was involved in the events complained of by plaintiff both in receiving administrative grievances from plaintiff concerning his double cell status and requests for psychiatric care, and in participating in a May 2, 2007 institutional classification committee decision that plaintiff did not require single cell status. However, once again plaintiff has presented no evidence suggesting that defendant Hubbard was deliberately indifferent in responding to any of plaintiff's inmate grievances. Moreover, from April 22, 2007 through the remainder of plaintiff's time at CMF, he was housed in a single cell without a cellmate. <u>A fortiori</u>, the May 2, 2007 institutional classification committee decision that plaintiff did not require single cell status caused plaintiff no cognizable harm. Therefore, Defendant Hubbard is entitled to summary judgment in his favor.

Based upon the evidence before the court, the sole involvement of defendant Benton in the events complained of by plaintiff was that defendant Benton signed a lockup order for plaintiff's placement in administrative segregation on April 22, 2007, following plaintiff's removal from the cell he shared with inmate Turner. There is no evidence before the court suggesting that defendant Benton acted with deliberate indifference to plaintiff's need for adequate mental health care in signing this order. Defendant Benton is also entitled to summary judgment.

Finally, the evidence reflects that defendant Grannis' sole involvement in the events complained of by plaintiff is based on defendant Grannis' role as Chief of Inmate Appeals for CDCR and, thereby, in the resolution of plaintiff's inmate grievances. However, there is no evidence before the court indicating that the resolution of these inmate grievances was the product of deliberate indifference to plaintiff's need for adequate mental health care. Accordingly Defendant Grannis is also entitled to summary judgment in his favor.

/////

For all of the foregoing reasons, this court finds defendants are entitled to summary judgment in their favor on the merits of plaintiff's Eighth Amendment claim. Since plaintiff's Eighth Amendment claim is without merit, the court need not reach the defense of qualified immunity upon which defendants seek summary judgment as well. Cf. Saucier v. Katz, 533 U.S. 194, 201 (2001) (discussing two parts of qualified immunity analysis, including inquiry as to whether facts establish violation of constitutional right).

## CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' April 13, 2011 motion for summary judgment (Doc. No. 67) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 6, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
wils1192.msj